

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | | | |
|---|---|---|---|
| BREK RENZELMAN, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| vs. | ) | Case No. | 23-C-0847 |
| | ) | | |
| | ) | | |
| MILWAUKEE SYMPHONY | ) | | |
| ORCHESTRA, INC. | ) | | |
| | ) | | |
| Defendant. | ) | | |

## COMPLAINT FOR VIOLATIONS OF TITLE VII AND TITLE I (ADA)

Plaintiff Brek Renzelman (hereafter "Renzelman" or "Plaintiff"), proceeding pro se, hereby files this Complaint against Milwaukee Symphony Orchestra, Inc. (hereafter "MSO" or "Defendant") for compensatory damages, punitive damages, and costs pursuant to Title VII and Title I (ADA).

## JURISDICTION

1. The original jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as the claims are substantively based on Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S. Code § 12101 *et seq.*

2. Venue is appropriate in the Eastern District of Wisconsin pursuant to 42 U.S.C. § 2000e-5(f)(3), as all alleged unlawful employment practices herein took place in the state of Wisconsin. Both the Plaintiff and Defendant are based in Greater Milwaukee.

## PARTIES

3. Plaintiff Brek Renzelman is an individual and citizen of the state of Wisconsin. He resides at 8345 N. Poplar Drive, Fox Point, WI 53217.

4. Defendant Milwaukee Symphony Orchestra, Inc. (Entity ID: 6M08850) is a Wisconsin non-stock corporation with its principal office located at 212 W. Wisconsin Avenue, Milwaukee, WI 53205.

## FACTUAL ALLEGATIONS

5. Plaintiff began his long career with MSO in 1985. He was hired as a full-time violist that year. MSO terminated the Plaintiff's contract after one year.

6. Plaintiff returned to MSO as a need-based musician from 1996 to 2007. He was elevated to long-term substitute status from 2007 to mid-2008. Plaintiff returned to his need-based musician status from September 2008 to March 2020.

7. He has been a dues-paying member of the Milwaukee Musicians' Association (AFM Local 8) since 1996.

8. MSO shut down operations in March 2020 due to the COVID-19 pandemic. As a result, the Plaintiff was out of work from March 2020 forward. He was offered work again once MSO operations restarted in September 2021.

9. Plaintiff was contacted via email by MSO Director of Orchestra Personnel Françoise Moquin on September 13, 2021. Plaintiff, as per usual prior to the MSO shutdown due to the pandemic, was offered work spanning from September 21, 2021 to September 23, 2021, from October 19, 2021 to October 23, 2021, and from November 3, 2021 to November 7, 2021.

10. Moquin wrote in that same email, "so you know, to ensure the health and safety of our employees, their families and members of our communities, the Milwaukee Symphony Orchestra has decided to require proof that musicians (and other employees) are fully vaccinated as a condition of work."

11. Plaintiff immediately objected to the last-hour vaccine mandate, and was immediately placed in the very uncomfortable position of speaking and writing about both his medical history and his sincerely-held religious beliefs in a work setting.

12. Plaintiff was essentially given an ultimatum to take the COVID-19 vaccines or miss out on the foregoing opportunities. He stated, among other things in a reply email, "Even if I were willing and medically able to comply…this would mean abandoning the possibility of consulting further with my doctor, seeking legal advice or in any other way assessing risk before complying with these last-minute demands." **See Exhibit A - Moquin 9-13-21 email and Renzelman response**. Defendant revoked the September 21, 2021 to September 23, 2023 work opportunity due to the Plaintiff's refusal of the COVID-19 vaccines.

13. Plaintiff, despite the discomfort, submitted his official request for a religious exemption based on his sincerely-held Jewish-Torah belief system.

14. Defendant literally demanded that the Plaintiff spontaneously relinquish his lifelong sincerely-held religious beliefs to conform with a COVID-19 vaccine mandate, or be blacklisted from employment. Plaintiff stated, *inter alia*, "My faith includes observance of tenets of Jewish practice that hold our human bodies to be vessels of the Divine spark of life, calling on us to live our lives consistent with a transcendent reality. Divine law does not change to meet the times, to satisfy social mores as to what is acceptable or even to take advantage

of medical and scientific so-called progress. It is an act of faith to adhere to Divine law in the face of challenges to our survival (Denial of employment is a direct threat to my survival). **See Exhibit B - Religious Exemption Request + Response**.

15. "And the Lord spoke to Moses, saying, 'Speak to the people of Israel and say to them, I am the Lord your God. You shall not do as they do in the land of Egypt, where you lived, and you shall not do as they do in the land of Canaan, to which I am bringing you. You shall not walk in their statutes. You shall follow my rules and keep my statutes and walk in them. I am the Lord your God. You shall therefore keep my statutes and my rules; if a person does them, he shall live by them: I am the Lord…' Leviticus 18:1-4.[1]

16. Moquin responded on October 5, 2021, encouraging the Plaintiff to focus on pursuing a medical exemption, while being dismissive and aloof regarding the Plaintiff's sincerely-held religious beliefs: "Apologies on the delay, **I am working on getting the request for religious exemption form approved.** Attached, I do have the form for a request for a medical exemption should you

---

[1] The Torah is the Five Books of Moses, the first five books of the Hebrew Bible: Genesis, Exodus, Leviticus, Numbers and Deuteronomy; that is Be-reshit, Shemot, Va-yikra, Be-midbar and Devarim.

choose to go that route, it might be a little quicker." See Exhibit B, supra. Emphasis added.

17. Meanwhile the Plaintiff filed an inquiry with the Milwaukee Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on September 24, 2021. The EEOC scheduled a phone appointment with the Plaintiff and its representative for November 30, 2021. Plaintiff was also in contact with a representative from his union.

18. Plaintiff finally got an appointment with Dr. Carol Brown on December 1, 2021. She authorized a medical exemption from the COVID-19 vaccines due to the Plaintiff's history of cancer on December 7, 2021. **See Exhibit D- Medical Exemption (Dr. Brown)**

19. The exemption form issued by MSO, however, says at the top that it must be submitted on or before September 7, 2021. The Plaintiff was offered the three jobs five days after that deadline, and, according to Moquin, he would not be considered "fully vaccinated" by MSO until weeks after his second injection anyway. Thus the entire process was predetermined from the start.. The October 5, 2021 email was the last communication from the Defendant to the Plaintiff regarding potential religious and/or medical accommodations.

Page 6 of 11

Case 2:23-cv-00847-BHL     Filed 06/26/23     Page 6 of 11     Document 1

20. The EEOC acknowledged and docketed charges of religious and disability discrimination against the Defendant on December 2, 2021. **See Exhibit E - EEOC docketed**.

21. Defendant responded to the EEOC charge on March 18, 2022 with its position statement. Defendant minimized and even belittled the Plaintiff's nearly four-decades-long history with the company, and besmirched his character. Defendant described the March 2020 shutdown of MSO as "terminating Mr. Renzelman…"

22. A summary of the Defendant's position statement is at the top of page 2: "In describing his religious belief [sic], Mr. Renzelman referenced several policies and secular ideologies, which do not require any accommodation under Title VII. And, after the MSO provided him a medical accommodation form to be filled out by his medical provider, he did not return the paperwork for nearly three months – and well after the series for which he would have be [sic] hired as a substitute had ended. Thus, for these reason[s] and for the reasons set forth below, the MSO requests the EEOC dismiss the claims in their entirety." **See Exhibit F - MSO position statement (EEOC)**.

23. In reality, the Plaintiff, less than 24 hours after being offered the September 2021 jobs, informed MSO that even if he called this doctor that day, it would be weeks before an appointment could be made. See Exhibit A, supra. He was provided the medical exemption form on October 5, 2021 and returned it December 7, 2021 - which was relatively fast during a pandemic. And despite the Defendant mischaracterizing the Plaintiff's sincerely-held religious beliefs as "secular ideologies," the Plaintiff unequivocally informed MSO on September 25, 2021 of his Jewish faith. See Exhibit B, supra.

24. The EEOC informed the Plaintiff on March 29, 2023 that it made no determinations regarding the charges and "makes no finding as to the merits of any other issues that might be construed as having been raised by this charge." See **Exhibit G - EEOC right to sue letter**.

25. Defendant further stated in the March 2022 position statement that, "[Renzelman] remains, moreover, on the MSO's roster as a violist substitute in the event he is needed." But the Plaintiff has been offered no further work since September 2021, after 35 years working with MSO.

### CLAIMS FOR RELIEF
**Count I: Violation of Title I (Americans with Disabilities Act of 1990); 42 U.S. Code § 12101 *et seq*.**

26. Paragraphs 1 through 25 are fully incorporated and set forth herein.

27. Cancer, even while in remission, is a disability under the ADA. *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 756 (8th Cir. 2016). The functioning of one's immune system is a major life activity under the ADA. 42 U.S.C. § 12102(2)(B).

28. Dr. Brown clearly stated in the medical exemption request that the Plaintiff was immunocompromised as a result of his cancer (Chronic Lymphocytic Leukemia).

29. Defendant failed in its duty to substantively engage with the Plaintiff regarding his disabilities, and failed to provide reasonable accommodations thereof.

30. Plaintiff is entitled to compensatory damages including, but not limited to, pain and suffering past, present and future; emotional distress, back pay and front pay based on average income in the previous three years (2016 to 2019).

### COUNT II: Religious Discrimination In Violation Of Title VII

31. Paragraphs 1 through 30 are fully incorporated and set forth herein.

32. Title VII requires employers to provide reasonable accommodations to employees who request exemptions from workplace policies on the basis of sincerely held religious beliefs.

33. Defendant failed in its duty to substantively engage the Plaintiff about his sincerely-held religious beliefs, and failed to provide reasonable accommodations thereof.

34. Plaintiff is entitled to compensatory damages including, but not limited to, pain and suffering past, present and future; emotional distress, back pay and front pay based on average income in the previous three years (2017 to 2020).

## CONCLUSION

WHEREFORE, the Plaintiff seeks relief as follows:

A. Compensatory damages in an amount to be decided by the jury;

B. Punitive damages in an amount to be decided by the jury;

C. Litigation costs, including, but not limited to, filing and service fees;

D. Any and all other relief the Court deems fair and equitable.

### JURY TRIAL DEMANDED

ON THIS _24th_ DAY OF JUNE, 2023.

_[signature]_

Brek Renzelman  
8345 N. Poplar Drive  
Fox Point, WI 53217  
414-446-8589  
brek@keplerquartet.com  
Pro Se Plaintiff